# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARK GLEN GROCE,<br><br>                        Plaintiff,<br>    v.<br>THEODORE BERNARD CLAUDAT,<br>d/b/a QUALITY INSTANT PRINTING,<br><br>                        Defendant. | Case No. 09cv01630 BTM (WMc)<br><br>**ORDER GRANTING MOTION FOR SUMMARY JUDGMENT** |

    Pending before the Court is Defendant's motion for summary judgment (Doc. 81). For the reasons set forth herein, the Court GRANTS Defendant's motion.

## I.  BACKGROUND

    In his first amended complaint ("FAC") (Doc. 31), Plaintiff alleges that he served as Defendant's employee beginning on or about November 15, 2004, and ending on July 29, 2005. Plaintiff alleges that during this period, Defendant committed various violations of the Fair Labor Standards Act, 29 U.S.C. § 201, *et seq.* ("FLSA"), California's Labor Code ("CLC"), and California's Unfair Competition Law ("UCL") (Cal. Bus. & Prof. Code § 17200, *et seq.*).

    Defendant's alleged violations of these statutes include the failure to provide overtime wages, the failure to adequately provide meal breaks, the failure to provide an itemized wage

1  statement (listing gross wages, net wages, deductions, tax and other items), the failure to
2  make required tax deductions and contributions from Plaintiff's wages, and the failure to
3  provide Worker's Compensation Insurance.
4        Plaintiff also alleges that he suffered an abdominal hernia on the job while moving a
5  paper folder weighing "approximately 300 to 350 lbs." on or about "the week of July 15,
6  2005[.]"  (FAC ¶¶ 29-30.)  Plaintiff alleges that this injury is the result of Defendant's
7  negligence, and that Defendant is directly liable to Plaintiff for damages arising out of this
8  injury as a result of Defendant's failure to provide Worker's Compensation Insurance at the
9  time of the alleged injury.
10  //
11  //
12  //
13  **II.  SUMMARY JUDGMENT STANDARD**
14
15        "The court shall grant summary judgment if the movant shows that there is no genuine
16  dispute as to any material fact and the movant is entitled to judgment as a matter of law."
17  Fed. R. Civ. P. 56(a); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).  A fact is
18  material when, under the governing substantive law, it could affect the outcome of the case.
19  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); Freeman v. Arpaio, 125 F.3d 732,
20  735 (9th Cir. 1997).  A dispute is genuine if a reasonable jury could return a verdict for the
21  nonmoving party.  Anderson, 477 U.S. at 248.
22        A party seeking summary judgment always bears the initial burden of establishing the
23  absence of a genuine issue of material fact.  Celotex, 477 U.S. at 323.  The moving party
24  can satisfy this burden in two ways: (1) by presenting evidence that negates an essential
25  element of the nonmoving party's case; or (2) by demonstrating that the nonmoving party
26  failed to establish an essential element of the nonmoving party's case on which the
27  nonmoving party bears the burden of proof at trial.  Id. at 322-23.
28        Once the moving party establishes the absence of genuine issues of material fact, the

1 burden shifts to the nonmoving party to set forth facts showing that a genuine issue of
2 disputed fact remains. <u>Celotex</u>, 477 U.S. at 314. The nonmoving party cannot oppose a
3 properly supported summary judgment motion by "rest[ing] on mere allegations or denials
4 of his pleadings." <u>Anderson</u>, 477 U.S. at 256. When ruling on a summary judgment motion,
5 the court must view all inferences drawn from the underlying facts in the light most favorable
6 to the nonmoving party. <u>Matsushita Elec. Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574,
7 587 (1986).

### III. DISCUSSION

11 Defendant seeks summary judgment as to all of Plaintiff's claims on the ground that
12 Plaintiff's claims are each barred by the applicable statutes of limitations, and Plaintiff has
13 failed to establish grounds for tolling the applicable limitations periods. Defendant also
14 argues that to the extent any of Plaintiff's claims are not time-barred, Plaintiff has failed to
15 carry his burden of showing a genuine issue of disputed fact regarding the elements of his
16 various claims. The Court addresses these arguments in turn.

17 Before reaching these substantive issues, however, the Court addresses Defendant's
18 request that the Court not consider Plaintiff's opposition to the summary judgment motion.
19 In an order dated May 16, 2012, the Court extended the deadline for Plaintiff to file his
20 opposition to the motion to dismiss until July 6, 2012. On July 13, 2012, Defendant filed a
21 reply brief asking that the Court (a) not consider any untimely opposition; and (b) grant the
22 summary judgment motion based on Plaintiff's non-opposition. <u>See</u> Doc. 96. Plaintiff
23 subsequently filed his opposition papers (Doc. 100) *nunc pro tunc* to July 18, 2012, the date
24 the Court received those papers. The Court denies Defendant's request.

25 Plaintiff, who is incarcerated, signed the proof of service for his opposition papers on
26 July 6, 2012, and declared that he deposited his opposition papers in the prison mail system
27 on that date. (Doc. 100 at 35 of 217.) As a *pro se* prisoner, Plaintiff is entitled to the
28 "mailbox rule," which dictates that the statutory filing date is the date on which Plaintiff

presented his papers for mailing to the Court, not that date on which the Court receives those papers. See Houston v. Lack, 487 U.S. 266, 276 (1988). Under this rule, Plaintiff timely filed his opposition papers. The Court denies Defendant's request to grant summary judgment on the basis of Plaintiff's non-opposition, and considers both Plaintiff's opposition papers (Doc. 100) and Defendant's substantive reply thereto (Doc. 103).

a.   Statutes of limitations

The statute of limitations for a cause of action under the FLSA is either **two years** or **three years** (willful violations only). 29 U.S.C. § 255(a). The statute of limitations begins to run at the date on which the employer fails to pay the required compensation (i.e. the regular pay day following the pay period during which Plaintiff alleges unpaid labor). 29 C.F.R. § 790.21(b). The statute of limitations for a cause of action under the CLC is **three years**. See Cal. Civ. Proc. Code § 338(a); Murphy v. Kenneth Cole Prods., Inc., 40 Cal. 4th 1094, 1114 (2007). The statute of limitations for any cause of action under the UCL is always **four years**, even where the predicate statutory violation under the Labor Code has a shorter statute of limitations. Cal. Bus. & Prof. Code § 17208; Cortez v. Purolator Air Filtration Prods. Co., 23 Cal. 4th 163, 178-79 (Cal. 2000). The statute of limitations on a personal injury action is **two years**. Cal. Civ. Proc. Code § 335.1.

Plaintiff appears to bring his claim for damages based on his workplace injury as an ordinary personal injury claim. For the sake of completeness, the Court notes that the CLC expressly confers on injured workers the right to bring an action at law against an employer who failed to secure the payment of compensation for a workplace injury. See Cal. Labor Code § 3706. A § 3706 claim is a "statutory cause of action," not a common law personal injury claim, and thus is "subject to the **three year** statute of limitations." Valdez v. Himmelfarb, 144 Cal. App. 4th 1261, 1268 (2d Dist. 2006). California courts have not decided whether a § 3706 claim accrues on the date of injury or the date on which the plaintiff discovers the employer is illegally uninsured. (Id. at 1270 n.20.) Regardless, to the

extent a § 3706 claim would be available to Plaintiff, such a claim would be barred by Plaintiff's delay: Plaintiff claims he was injured "on or about the week of July 15, 2005 . . . ." (FAC ¶ 30.) Plaintiff also states that "in the same week of the injury [he] informed [D]efendant of his injury[,]" and that the Defendant then "informed plaintiff he did not have workers' compensation insurance." (Id.) Plaintiff commenced the present action on July 24, 2009; more than three years past the date both of his injury and of the date on which Plaintiff discovered that Defendant was uninsured. Thus, Defendant's cause of action arising out of his alleged workplace injury, even if cast as a § 3706 claim, is barred by the statute of limitations.

The parties do not dispute that the employment relationship between Plaintiff and Defendant ended on July 29, 2005. Plaintiff commenced this lawsuit on July 24, 2009--just under four years later. Absent any tolling, Plaintiff's delay exceeds the statute of limitations for all of Plaintiff's causes of action except for UCL claims accruing after July 23, 2005.

b.  Tolling

The FAC makes allegations that the Court construes as a claim for statutory tolling based on Plaintiff's incarceration. Plaintiff also argues that he is entitled to equitable tolling, and that Defendant should be equitably estopped from asserting any statute of limitations defenses. The Court rejects Plaintiff's tolling arguments.

**1.  Statutory tolling**

In the August 24, 2010 order dismissing the original complaint, the Court stated: "If Plaintiff wishes to invoke equitable or statutory tolling, he must plead facts showing he is entitled to it." (Doc. 25 at 4.) In the FAC, Plaintiff included allegations that "he was incarcerated on or about August 15, 2005, and remained incarcerated for an uninterrupted period up to and including the filing of the instant complaint[,]" and that "he received a life term of incarceration on or about August 14, 2006, and as a result of the uninterrupted

period of incarceration and life term the statute of limitations has been tolled." (Doc. 31 at ¶¶ 8-9.)

These allegations fall short of establishing an entitlement to statutory tolling. California Code of Civil Procedure § 352.1(a) states:

> If a person entitled to bring an action, mentioned in Chapter 3 (commencing with Section 335),[1] is, ***at the time the cause of action is accrued***, imprisoned on a criminal charge, ***or in execution under the sentence of a criminal court for a term less than for life***, the time of that disability is not a part of the time limited for the commencement of the action, not to exceed two years.

Cal. Code Civ. P. § 352.1(a) (emphasis added). This provision provides no relief for Plaintiff, first because Plaintiff's causes of action accrued before he was imprisoned, and second because Plaintiff is incarcerated for a life term. (FAC ¶ 9; June 10, 2007 Letter from M. Groce to Labor Commissioner (Doc. 100, Ex. D).) As to Plaintiff's FLSA claim, there is no statutory tolling available under that statute.

//
//

### 2. Equitable tolling

The doctrine of equitable tolling is a judge-made doctrine that permits tolling of the limitations period "to prevent the unjust technical forfeiture of causes of action, where the defendant would suffer no prejudice." Lantzy v. Centex Homes, 31 Cal. 4th 363, 270 (2003). Where state law causes of action are at issue, the Court "must abide by a state's tolling rules, which are integrally related to statues of limitations." Albano v. Shea Homes Ltd. P'ship, 634 F.3d 524, 530 (9th Cir. 2011). Under California law, a party claiming equitable tolling must show: "first, that the plaintiff gave timely notice to the defendant of the plaintiff's claim; second, that the resultant delay did not cause prejudice to the defendant's position; and third, that the plaintiff acted reasonably and in good faith." Ervin v. Los Angeles Cty., 84 F.3d 1018, 1019 (9th Cir. 1988).

Similarly, under federal law, equitable tolling applies "if, despite all due diligence, a

---

[1] The statutes of limitations covered in California Code of Civil Procedure § 335 *et seq.* cover all civil actions "other than for the recovery of real property[.]"

plaintiff is unable to obtain vital information bearing on the existence of his claim[,]" and the focus of the inquiry is "on a plaintiff's excusable ignorance and lack of prejudice to the defendant." Garcia v. Brockway, 526 F.3d 456, 465 (9th Cir. 2008). "Equitable tolling applies when the plaintiff is prevented from asserting a claim by wrongful conduct on the part of the defendant or when extraordinary circumstances beyond a plaintiff's control made it impossible to file a claim on time." Stoll v. Runyon, 165 F.3d 1238, 1242 (9th Cir. 1999). Equitable tolling is not generally available where the claimant "failed to exercise due diligence in preserving his legal rights." Irwin v. Dep't of Veteran Affairs, 498 U.S. 89, 96 (1990).

Plaintiff bases his equitable tolling argument on a series of communications relating to his efforts to bring administrative grievances against Defendant in 2006 and 2007. Plaintiff contends that he relied on "erroneous and misleading advice provided by the [California Division of Labor Standards Enforcement ("DLSE") that] led plaintiff to believe that the time to commence the action was tolled." (Opp. Br. at 7.) Plaintiff supports this argument with the following factual allegations:

In 2006, Plaintiff attempted to bring a claim against Defendant in front of the Division of Labor Standards Enforcement ("DLSE") of the California Department of Industrial Relations. Attached to Plaintiff's opposition to the summary judgment motion is a June 19, 2006 "Notice of Claim and Conference" ordering Defendant to appear on July 25, 2006, to resolve Plaintiff's claim for overtime wages and penalties. (Doc. 100, Ex. 1.) At some point prior to the July 25 hearing, Plaintiff sent a letter to C. L. Shur, the Deputy Labor Commissioner handling his case, stating that Plaintiff would be unable to attend the hearing because he was "incarcerated in the San Diego County Sheriff's Department, with **no pending date of release**." (Doc. 100, Ex. 2 (emphasis added).) On July 14, 2006, the DLSE responded in a letter stating the following:

> This notice is to advise you that the claim conference scheduled for 7/25/06 is canceled and off-calendar until further notice due to the plaintiff's unavailability per your letter indicating that you are incarcerated. **Your claim file will be closed, but upon completion of your incarceration, you may write to request its reopening** by the Labor Commissioner's office for the purpose of proceeding on the claim investigation . . . .

(Doc. 100, Ex. 3 (emphasis added).)  Approximately one year later, on June 10, 2007, Plaintiff sent a letter to the DLSE, stating that he would be unable "to reopen the case because of a **life sentence**," and requesting that the Labor Commissioner either allow him to proceed telephonically or through an appointed representative.  (Doc. 100, Ex. 4 (emphasis added).) On August 2, 2007, the DLSE responded in a letter stating that he could appoint a representative and that his case would be reviewed for reopening if he did so, but warning

> that if you as plaintiff are unavailable to appear in order to give direct testimony as to the facts in your case, this could conceivably affect the outcome of any hearing in the matter and your ability to meet the preponderance of the evidence standard within a potential 98a hearing.

(Doc. 100, Ex. 5.)  Plaintiff has not provided evidence of any further activity on his claim before the DLSE.

Plaintiff also attempted to open a claim against Defendant before the California Worker's Compensation Appeals Board.  Exhibit 6 to his opposition to the motion for summary judgment is a June 7, 2006 "Notice of Application" stating that an application for adjudication of claim had been filed two days prior by "Mark G. Groce" against "Theodore B. Claudat D.B.A."  (Doc. 100, Ex. 6.)  On July 17, 2006, Plaintiff sent a letter to "T. Lam" stating that he was incarcerated with "**no pending date of release**," and that "as a result of my incarceration I am unable to pursue the uninsured employers' claim and require the assistance of an attorney to proceed with the claim."  (Doc. 100, Ex. 7 (empahsis added).)  Plaintiff received a letter from the Division of Workers' Compensation of the California Department of Industrial Relations ("DWC"), signed by T. Lam and dated August 1, 2006, attaching a list of attorneys and stating "**You may want to consult an attorney following the completion of your incarceration** as Uninsured Employers' Fund cases are complicated and take a while to resolve."  (Doc. 100, Ex. 8 (emphasis added).)

Plaintiff contends that the language of the July 14, 2006 letter from the DLSE and the August 1, 2006 letter from the DWC suggest that limitations periods on Plaintiff's claims were tolled during his incarceration.  As a threshold issue, the Court notes that the exhibits

Plaintiff relies on to support this argument are not authenticated, as Plaintiff has failed to refer to them in his sworn declaration. See Bias v. Moynihan, 508 F.3d 1212, 1224 (9th Cir. 2007) ("Rule 56(e) . . . requires that a proper foundation be laid for evidence considered on summary judgment. The documents must be authenticated and attached to a declaration wherein the declarant is the person through whom such exhibits could be admitted into evidence." (citation and quotation marks omitted)). Defendant has objected to the admissibility of these unauthenticated documents. Accordingly, the Court cannot properly consider this evidence in opposition to Defendant's summary judgment motion.

However, even assuming the authenticity of the above-mentioned documents, the Court rejects Plaintiff's tolling argument. Plaintiff correctly asserts that under certain circumstances, "it has been found that equitable tolling is appropriate where a plaintiff's delay in bringing suit was caused by erroneous instructions from the administrative agency charged with public enforcement of the relevant statute." Huss v. City of Huntington Beach, 317 F. Supp. 2d 1151, 1162 (C.D. Cal. 2000); see also Bowden v. United States, 106 F.3d 433, 438 (D.C. Cir. 1997) ("Like other courts, we have excused parties who were misled about the running of a limitations period . . . by a government official's advice upon which they reasonably relied[.]"). In Huss, the court found that the plaintiffs were entitled to equitable tolling on the ground that the Department of Labor had repeatedly (and erroneously) informed Plaintiffs that "they could not pursue a private right of action under the FLSA until the DOL had completed its investigation." 317 F. Supp. 2d at 1162. However, in cases where the plaintiff misunderstands accurate advice provided by agency officials, courts have found "no extraordinary circumstance exist[ing] to justify equitable tolling." Sinha v. New York City Dept. of Educ., 2004 WL 878000, at *3 (E.D.N.Y. Apr. 26, 2004).

However, the letters sent by the DLSE and the DWC to Plaintiff do not contain "erroneous advice" such that Plaintiff acted "reasonably and in good faith" by waiting four years to file his present claims. Both letters were responses to statements by Plaintiff that he was unable to proceed with his appeals because he was incarcerated for an uncertain term. Neither letter promised that he could reopen his appeals upon release from prison.

Rather, the July 14, 2006 letter from the DLSE stated he could *request* reopening of his case upon completion of his prison sentence, and the August 1, 2006 letter from the DWC only suggested that Plaintiff contact an attorney upon his release. (Doc. 100, Exs. 3 & 8.) These letters confirmed that Plaintiff's incarceration was an obstacle to the pursuit of his claims, but neither letter stated that incarceration was an absolute bar, and neither suggested that incarceration is a sufficient condition for tolling the limitations periods indefinitely, particularly in light of the fact that Plaintiff knew he had been sentenced to a term of life by the time he wrote his June 10, 2007 letter to the DLSE. The Court finds that Plaintiff could not have reasonably interpreted the DLSE and DWC letters as statements that the limitations periods on his claims were tolled indefinitely due to his imprisonment for a term of life.

The Court notes that this case is not a "close call" in which Plaintiff missed the filing deadline by a short period of time. Plaintiff waited approximately one year to file claims with the DLSE and DWC, and waited approximately three more years before filing the present action. Nothing in the DLSE and DWC letters suggests that Plaintiff faced any bar to filing a lawsuit. More specifically, neither letter implies any exhaustion requirement for Plaintiff's wage-hour and workers' compensation claims, nor is there any. See Cal. Labor Code §§ 1194, 3706; Murphy v. Kenneth Cole Prods., Inc., 40 Cal. 4th 1094, 1115 (2007) (holding that a plaintiff may pursue a "wage-related claim" *either* by bring a § 98 hearing before the DLSE *or* by bringing "a civil action" against the employer).

Moreover, Plaintiff fails to explain how he came to realize--albeit three years later--that a federal lawsuit was a permissible alternative, or why it took so long for him to file. Plaintiff states only that he "continued to gather and preserve documentary evidence essential to sustain specific components of the instant complaint (e.g., overtime wages, breaks and meal breaks, workers' compensation)." (Opp. Br. at 6, 13.) The only evidence Plaintiff offers in support of these efforts to gather information is two letters sent to Defendant--one dated December 27, 2006, and one dated July 13, 2009--requesting *all* of Defendants "employment records" including "but not limited to Itemized Wage Statements, State Disability Insurance Deductions/Contributions, Income Tax Withholdings for both Federal

and State, Medical and Social Security Contributions." (Doc. 100, Exs. 9 & 10.) But sending two requests for documents in the span of three years does not constitute diligence, and Plaintiff does not explain how or why the requested documents were necessary to assert his present causes of action. Thus, even if Plaintiff's alleged interpretation of the DLSE and DWC letters was reasonable at first, Plaintiff did not act dilligently, or "reasonably and in good faith," in waiting until 2009 to file his civil suit.

Moreover, Plaintiff argues that his DLSE and workers' compensation grievances provided notice of his claims to Defendant, and prevented prejudice. But the DLSE claim file was closed 37 days after it was opened, and Plaintiff abandoned his workers' compensation claim 40 days after applying to open it. Thus, Defendant had no reason to marshal a defense against those claims at that time. Then, Plaintiff waited an additional three years before filing the present lawsuit–causing a delay that would reasonably lead Defendant to believe he no longer faced liability on Plaintiff's FLSA, CLC, and personal injury claims. The Court also finds that the prejudice caused by Plaintiff's delay is significant, particularly in light of the fact that his wage-hour claims are based on self-reported time sheets, and the passage of time clearly affects Defendant's ability to respond (e.g. by presenting witness testimony or other evidence to contest whether Plaintiff was actually working during times he reported himself at work).

The Court therefore declines to apply equitable tolling to Plaintiff's claims, both federal and state.

//
//

### 3. Equitable estoppel

The doctrine of equitable estoppel precludes a party "from asserting the statute of limitations as a defense to an admittedly untimely action because his conduct has induced another into forbearing suit within the applicable limitations period." Battuello v. Battuello, 64 Cal. App. 4th 842, 847 (1st Dist. 1998). In California state court, "[t]he defendant's statement or conduct must amount to a misrepresentation bearing on the necessity of

bringing a timely suit; the defendant's mere denial of legal liability does not set up an estoppel." Lantzy v. Centex Homes, 31 Cal. 4th 363, 384 n.18 (2003). The Ninth Circuit has held:

> A finding of equitable estoppel rests on the consideration of a non-exhaustive list of factors, including: (1) the plaintiff's actual and reasonable reliance on the defendant's conduct or representations, (2) evidence of improper purpose on the part of the defendant, or of the defendant's actual or constructive knowledge of the deceptive nature of its conduct, and (3) the extent to which the purposes of the limitations period have been satisfied.

Santa Maria v. Pacific Bell, 202 F.3d 1170, 1176 (9th Cir. 2000), *overruled on other grounds by* Socop-Gonzalez v. I.N.S., 272 F.3d 1176, 1194 (9th Cir. 2001).

In support of his claim for equitable estoppel, Plaintiff asks the Court to "examine the actions or inactions of the defendants['] efforts to chill plaintiff['s] pursuit of documentary evidence necessary to bring this suit." (Opp. Br. at 13.) Plaintiff then directs the Court to his December 27, 2006 and July 13, 2009 letters to Defendant requesting "employment records," and Defendant's "failure to provide a reply as required by Labor Code § 226(c)." (Id.) As a preliminary matter, CLC § 226 pertains to records that are specific to each individual employee, and § 226(c) does *not* obligate employers to provide former employees any information--such as the information requested by Plaintiff in his two letters--that is non-specific to that former employee. And regardless of whether Defendant complied with § 226, any failure to respond to Plaintiff's requests for documents does not provide grounds for equitable estoppel. Plaintiff already knew the factual bases for his causes of action, since he brought administrative grievances in 2006 based on the same wage-hour and workers' compensation theories presently asserted, and Defendant's failure to respond to his document requests did not lull Plaintiff into a false sense of security regarding his need to bring a timely suit. If anything, Defendant's inaction should have motivated Plaintiff to bring suit sooner.

As a result of Plaintiff's delay in filing the present lawsuit, the Court grants summary judgment in favor of Defendant on all of Plaintiff's FLSA, CLC, and personal injury claims, and on Plaintiff's UCL claims to the extent they accrued on or before July 24, 2012.

c.  UCL Claims

As stated above, the statute of limitations for claims under the UCL is four years. Cal. Bus. & Prof. Code § 17208. Since Plaintiff ended his employment relationship with Defendant on July 29, 2005, and Plaintiff filed the present lawsuit on July 24, 2009, Plaintiff is not time-barred from bringing any UCL claims that accrued during the final five days of Plaintiff's employment with Defendant. Plaintiff alleges wage-hour violations occurring during this period (Doc. 100, Ex. 45 (timesheet showing overtime hours on July 25, 2005)), and has asserted these violations as UCL causes of action in the FAC. Thus, the Court addresses on the merits Plaintiff's claim for overtime wages earned between Monday, July 25, 2005, and Friday, July 29, 2005.

Under the UCL, a trial court has broad equitable power to award restitution after considering "the equities on both sides of a dispute." Cortez v. Purolator Air Filtration Prods. Co., 23 Cal. 4th 163, 180 (2000) (holding that "[t]he court's discretion is very broad" in fashioning restitutionary relief under the UCL). Based on the Court's review of the record on summary judgment, the Court finds that Plaintiff is not entitled to restitution for any claims accruing in July 2005 because the evidence before the Court, viewed in the light most favorable to Plaintiff, establishes that Plaintiff owed Defendant reimbursement for salary advances at the time his alleged UCL claims accrued.

It is undisputed that Plaintiff received $1,500 from Defendant prior to the termination of his employment, that $500 of that amount was a salary advance made by Defendant to Plaintiff on July 29, 2005, and that Plaintiff was taken into custody on criminal charges shortly after the end of the employment relationship. (Def. Br. at 8-9; Opp. Br. at 18; Rep. Br. at 3.) Defendant testified at Plaintiff's criminal trial that these sums were salary advances, and that Plaintiff owed him money at the end of the employment relationship. See Doc. 81-2, Ex. 2 (12 June 2006 Claudat Trial Testimony) at 179:23-180:28.) Additionally, Defendant states in his own affidavit that "[c]ontrary to his claims, Mr. Groce was never injured on the premises of Quality Instant Printing[,]" and that he "did not give Mr.

Groce any money to pay medical bills." (Doc. 103-1 (Claudat Decl.) at ¶¶ 9-10.) Defendant's claims find conclusive support in two letters sent by Plaintiff to Defendant in 2005 in which Plaintiff admitted he owed Defendant money. On August 20, 2005, Plaintiff wrote to Defendant: "My intent is to reimburse you for the *advances*." (Doc. 81-2, Ex. 3 (8 Aug. 2005 letter from Mark Groce to Claudat) (emphasis added).) Then, on December 24, 2005, Plaintiff wrote: "As indicated in the previous letter I have no problem with reimbursing you for the *advances* [of] $1500." (Doc. 81-2, Ex. 4 (24 Dec. 2005 letter from Mark Groce to Claudat) (emphasis added).)

Plaintiff now claims that he is entitled to the $1,500: He states that Defendant failed to carry workers' compensation insurance, that Plaintiff suffered an abdominal hernia on the job on or about July 15, 2012, and that Defendant advanced Plaintiff money for the purpose of paying for Plaintiff's medical treatment. (Doc. 100 (Groce Decl.) at ¶¶ 13-15.) Regardless of whether Plaintiff suffered a hernia, Plaintiff's claim to the $1,500 on the basis of any workplace injury finds no support in the record, and contradicts the plain language of letters written by Plaintiff in 2005. "When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." Scott v. Harris, 550 U.S. 372, 380 (2007) (citing Fed. R. Civ. Proc. 56(c)). In light of all the evidence before the Court, and particularly in light of Plaintiff's admission in two 2005 letters to Defendant that Plaintiff owed Defendant reimbursement for "advances," the Court finds that Plaintiff is not entitled to restitution as a matter of law. Therefore, the Court grants Defendant summary judgment on Plaintiff's UCL claim.

//
//
//
//
//
//

## IV.  CONCLUSION

For the reasons set forth above, the Court GRANTS Defendant's motion and awards summary judgment in favor of Defendant on all causes of action.  The Clerk shall enter judgment accordingly.

**IT IS SO ORDERED.**

DATED:  April 30, 2013

_____
BARRY TED MOSKOWITZ, Chief Judge
United States District Court